JON 0. NEWMAN, Circuit Judge,
(with whom LUMBARD, Circuit Judge, concurs) concurring:
I concur in Judge Altimari’s comprehensive opinion, but add these additional words in the hope of preventing a reoccur-rence by any prosecutors of the type of outrageously unfair conduct that transpired during the Government’s rebuttal summation. Though the setting aside of the predicate act findings concerning the murder of Detective Venditti and the attempted murder of Detective Burke has eliminated the prejudicial effect of the misconduct, it is important that what happened should be known so that a lesson may be learned.
The episode concerns the playing of two tapes of wiretapped conversations for the first time in the trial during the prosecution’s rebuttal summation. The tactic was unfair in itself, and its effect was exacerbated by the prosecutor’s unfair argument *494 and the District Court’s denial of any opportunity for corrective action. The episode requires a detailed understanding of the circumstances.
In the course of the Government’s investigation of the defendants’ gambling activities, lawful wiretaps were placed on numerous telephones, including the home of defendant Giovanelli. Early in the trial 105 tapes covering many of the wiretapped conversations were admitted into evidence as a group, a step that fairly could be understood to settle issues of legality and authenticity, leaving the particular evidentia-ry propriety of each tape for consideration when the Government saw fit to play it for the jury. In fact, at various points during the trial the prosecutors asked foundation questions to establish the propriety of having the jury hear particular tapes, and on some occasions the District Court ruled individually with respect to the playing of particular tapes, for example, barring the prosecution from playing one tape that concerned Giovanelli’s relation with his lawyers and barring defense counsel from playing tapes on cross-examination of a witness that had not been played during direct examination.
By the time the trial record closed, many but not all of the tapes had been played for the jury. Left unplayed were tapes of three conversations in which Giovanelli’s wife participated. All three were recorded on January 24, 1986, shortly after the defendants had been arrested. At 7:11 a.m. Mrs. Giovanelli spoke with a co-worker and told her that the police had arrested two more men, in addition to her husband, and that these two men, Gualtiere and Maltese, had been home with their families the night of the shootings. A tape of this conversation was not in the 105 tapes technically placed “in evidence” by the prosecution. This conversation indicated that early on the morning of January 24, Mrs. Giovanelli already understood that the Gualtiere and Maltese families were asserting that Gual-tiere and Maltese had alibi defenses to the Venditti/Burke shootings.
The Government’s wiretap log disclosed that two hours later, Federico Giovanelli, then incarcerated, called his wife twice, but these conversations were not recorded. At 9:20 a.m. Mrs. Giovanelli spoke with Gualti-ere’s wife. Mrs. Giovanelli said the following: “I just spoke to Freddie [Federico Giovanelli],” “He was very surprised to hear what happened to Buddy [Carmine Gualtiere],” and “He [Federico Giovanelli] say, ‘You and your family go to court and make a stink. You scream and yell and you tell ’em your husband was home.” At 2:02 p.m. the two wives spoke again. Mrs. Giovanelli asked, “Did you talk to the people in your neighborhood?” Mrs. Gualtiere answered, “Yeah. Everything’s fine.” Mrs. Giovanelli said, “O.K. That’s good.”
When counsel discussed the jury charge, the prosecution asked for an instruction that evidence of manufacturing an alibi could be considered as consciousness of guilt. In response to the defendants’ contention that there was no such evidence, the prosecution pointed to evidence concerning an effort, not involving Gualtiere, to fabricate evidence of an alibi to the Bentivegna shooting in 1976. The District Judge cautioned the prosecution to modify its request so as not to include Gualtiere. At that time the prosecution made no claim that the January 24, 1986, telephone conversations were evidence of an effort to fabricate an alibi for the Venditti/Burke shootings.
The prosecution’s opening summation challenged the alibi defense of Gualtiere and Maltese primarily on the basis of the Government’s affirmative evidence of the defendants’ roles in the Venditti/Burke shootings and because of the motive of family members to lie. The opening summation made no mention of the January 24, 1986, phone conversations.
In the rebuttal summation, the prosecutor for the first time in the trial played the tapes of the 9:20 a.m. and 2:02 p.m. conversations between Mrs. Giovanelli and Mrs. Gualtiere and argued that these tapes showed that the Gualtiere alibi had been Giovanelli’s idea. His argument included the following:
*495 Mr. Gualtiere’s alibi witnesses, though, his family members, didn’t come in and cook up a story on their own.
They had encouragement from someone. They had encouragement from the boss, Fritzy [Federico] Giovanelli.
And I’ll show you how.
[Portion of tape of 9:20 a.m. conversation played]
Fritzy was saying: You go in, you cook up an alibi, and you go into court and you make a stin[k]. And that’s what they did. That’s what you heard here on the stand.
The prosecutor then played a portion of the tape of the 2:02 conversation and argued that this showed that Mrs. Gualtiere had prevailed upon people in the neighborhood to support her husband’s alibi.
At the conclusion of the rebuttal, defense counsel, who had been prohibited from objecting during summations, strenuously objected to the prosecutor’s tactic. They contended that the summation was improper rebuttal, that the tapes had been played when the defense had no opportunity to respond, and that the argument that Giova-nelli originated the Gualtiere and Maltese alibis was known by the prosecutor to be untrue as revealed by the 7:11 a.m. phone conversation in which Mrs. Giovanelli discussed the alibis before speaking with her husband. Defense counsel asked for an opportunity to play the remainder of the tapes, to have a brief rebuttal summation, and for a mistrial. The District Court denied all their requests. During jury deliberations, the jury inquired about the full text of the redacted transcripts of wiretapped conversations and said that they were “particularly interested” in the transcripts of the 9:20 a.m. and 2:02 p.m. conversations on January 24.
I find it hard to believe that a prosecutor from an office with the high standards for professionalism and integrity to which the United States Attorney for the Southern District of New York normally adheres would engage in the tactic just recounted. In the first place, it is questionable whether the two tapes were fully “in evidence.” Though they were in the collection of generally admissible tapes, there had been no opportunity to consider any particular evi-dentiary issues relating to these tapes, such as hearsay and the claim, advanced on appeal, that, despite the original lawfulness of the wiretapping, tapping the defendant’s home after his arrest violated his Sixth Amendment rights.[1]
Far more serious, however, is the playing of the tapes for the first time in the trial during a rebuttal summation. “Rebuttal provides the government with the opportunity to respond to defendant’s arguments. It does not allow the government to bring in new matters.” United States v. Byrd, 834 F.2d 145, 147 (8th Cir.1987); see United States v. Gleason, 616 F.2d 2, 25-26 (2d Cir.1979), cert. denied, 444 U.S. 1082, 100 S.Ct. 1037, 62 L.Ed.2d 767 (1980). Compounding the unfairness is the prosecutor’s argument that Giovanelli “cook[ed] up” the alibi, an argument made despite the prosecutor’s knowledge that a prior tape existed showing that Mrs. Giovanelli had discussed the Gualtiere alibi two hours before speaking with her husband. See United States v. Valentine, 820 F.2d 565 (2d Cir.1987) (reversal for prosecutorial misconduct where prosecutor’s argument refuted by unoffered evidence in prosecutor’s files).
If the prosecutor thought that the 9:20 a.m. and 2:02 p.m. tapes showed that Giov-anelli had originated the alibi defense, he should have played these tapes during the trial. That would have afforded the defense an opportunity to play the balance of the tapes to fill out the context,[2] see Fed. R.Evid. 106, United States v. Southland *496 Corp., 760 F.2d 1366, 1378 (2d Cir.), cert. denied, 474 U.S. 825, 106 S.Ct. 82, 88 L.Ed.2d 67 (1985), and, more important, play the 7:11 a.m. tape to show that Mrs. Giovanelli was aware of the alibi defense before speaking with her husband. The prosecutor had a clear right to play the two tapes, if admissible, and argue any reasonable inference they support. He had no right to withhold both the presentation of the evidence and the argument based on it until the rebuttal summation. “[F]air and effective administration of justice is best served if the defendant knows the arguments actually made by the prosecution in behalf of conviction before the defendant is faced with the decision whether to reply and what to reply.” Fed.R.Crim.P. 29.1 advisory committee’s note.
Nor does the prosecution reflect credit on itself by its disingenuous defense of its tactic in its appellate brief. Endeavoring to respond to the defense contention that Giovanelli had been unfairly and even falsely accused of originating the alibi defense, the prosecution says that “[i]t never argued that Giovanelli had originated the idea of false alibis.” Brief for Appellee at 74 (emphasis in original). This is an extraordinary claim to make in defense of extraordinary behavior in light of the prosecutor’s explicit statements to the jury that “Gualtiere’s alibi witnesses ... didn’t come in and cook up a story for you on their own ... They had encouragement from the boss ... Fritzy was saying: You go in, you cook up an alibi....” At oral argument, the prosecution endeavored without notable success to explain how accusing Giovanelli of “cook[ing] up” an alibi was not the same as “originating” one.
The rebuttal summation was highly improper, and some brief opportunity should have been afforded the defense to respond, including playing the 7:11 a.m. tape. The Government’s opportunity to have the last word must give way when that opportunity is abused. Since the episode, unfortunate as it was, had no bearing on the establishment of guilt of the gambling, loan-sharking, and unlawful debt collection activities that form the valid bases of conviction, I agree with Judge Altimari that affirmance is warranted and join in his opinion.

. To illustrate the hazard of permitting the jury to consider particular tapes not given individualized consideration by the trial court, the defendants note that the redacted transcript of the 2:02 p.m. conversation shown to the jury quoted Mrs. Giovanelli as asking whether Mrs. Gaulti-ere had spoken to “your people in the neighborhood,” whereas, according to a later prepared defense transcript, she actually referred on the tape to "the people in your neighborhood.”

. For example, the balance of the 9:20 a.m. tape would have disclosed that Mrs. Giovanelli had previously discussed with a lawyer the possible presentation of the alibi defense in an effort to obtain bail for the defendants.